July 10th, 2022
Eric Ustian
612 Longfellow Ave.
Hermosa Beach, CA 90254
310-497-0646
eric@pieravefilms.com

**Attorney for Defendants:**
Robert Berry
Berry Silberberg Stokes PC
16150 Main Circle Drive #120
314-480-5881
rberry@berrysilverberg.com

*BERRYSILBERBERG.COM*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Plaintiffs:** MOST GUYS ARE LOSERS LLC, PIER AVENUE FILMS LLC, & ERIC USTIAN | Case no: 2:22 - cv - 04589 - DCF - AS |
| | **FIRST AMENDED COMPLAINT REMOVING MOST GUYS ARE LOSERS LLC, PIER AVENUE FILMS LLC, AS PLAINTIFFS; ADDING JON HAUSER AS A DEFENDANT, DROPPING 4TH, 6TH, 11TH CAUSES OF ACTION; REQUESTING INJUNCTIVE RELIEF; REQUESTING RELIEF ARISING FROM:** |
| v. | |
| **Defendants:** DRAKE REAL ESTATE SERVICES, STUBBLEFIELD FILMS LLC | (1) WRONGFUL ACQUISITION OF ENRICHMENT |
| | (2) THEFT OF INTELLECTUAL PROPERTY |
| | (3) IMPRUDENT LOANS FROM, AND SELF DEALING ACTIONS WITH EVAN ZUCKER AND POWDER BOWL INVESTMENTS |
| | (4) EXTORTION |
| | (5) ADDITIONAL CLAIMS OF TAX FRAUD |
| | (6) COPYRIGHT INFRINGEMENT |

**FIRST AMENDMENT TO COMPLAINT**

Current Plaintiffs are the companies, Most Guys are Losers LLC, a California based single member LLC, of which Eric Ustian is the Manager and Owner and Operator; Pier Avenue Films LLC, a California based single member LLC, of which Eric Ustian is the Manager and Owner and Operator; and Eric Ustian, an individual, who is a California resident. Most Guys are Losers is an independent film, financed through Most Guys are Losers LLC and produced by Pier Avenue Films LLC. The Film was acquired by a distributor in April 2022, with a release on July 1, 2022.

Current Defendants are; Drake Real Estate Services, a Colorado based real estate company, owned and operated by Jon Hauser. Stubblefield Films, a Colorado company with an unknown professional affiliation, owned and operated by Jon Hauser.

This Amendment to the Complaint seeks to remove Most Guys are Losers LLC, Pier Avenue Films LLC, as Plaintiffs. And add Jon Hauser, an individual who is Manager of Stubblefield Films, as a Defendant.

This Amendment seeks to remove claims #4, #7, #11 from from causes of action, and add Wrongful Acquisition of Enrichment; Theft of Intellectual Property; Imprudent Loans From, and Self Dealing Actions with Evan Zucker and Powder Bowl Investments; Extortion; Additional Tax Fraud Claims; (as new information has been acquired related to Tax Fraud allegations since the filing of original complaint) and Copyright Infringement, to the Causes of Actions of the complaint.

This First Amendment to Complaint is filed within 21 days since Defendants were served the complaint.

Eric Ustian conferred extensively with Mr. Berry, Defendant's attorney, on this First Amendment to Complaint through over dozen emails with Mr. Berry and between Mr. Berry and Eric Ustian. Mr. Berry informed Mr. Ustian of his intent to oppose the new causes for actions, while not objecting to the proposed removed claims, along with not opposing Plaintiffs' request of removing Pier Avenue Films LLC and Most Guys are Losers Film LLC (also

known as Most Guys are Losers LLC, MGAL LLC, MGAL FILM LLC) as Plaintiffs.

Current Plaintiffs, Eric Ustian, Pier Avenue Films and Most Guys are Losers LLC, files this First Amended Complaint and complains and alleges as follows:

## FIRST CAUSE OF ACTION

## TORTIOUS INTERFERENCE

From May of 2021 to present day, Stubblefield Films and Drake Real Estate Services have waged a campaign of deceit, while failing to provide proof of their claims of ownership, while, impeding progress of Most Guys are Losers LLC.

In June of 2021, through a lawyer that claimed to be a "representative of Stubblefield Films," (Jason Spitalnick) contacted Mark Padilla, of Double Dutch International, a Sales Agency formerly representing the film, Most Guys are Losers.

Stubblefield Films informed Double Dutch ("DDI") that Stubblefield Films claimed that their  company "owned the film." Stubblefield Films also informed DDI that they would take legal action against DDI for any advancement of the Film taken by DDI.

This was done at a time when Stubblefield Films clearly did not own the asset, as evidenced by Stubblefield Films being unable to, or unwilling to, present any valid and executed contracts related to their fraudulent claims.

This action by Stubblefield Films was also done at a time when there was an agreed upon and executed deal with Saban Films, a top end Distributor in the Entertainment Business. The deal with Saban Films was legally and rightfully executed by Eric Ustian, the Manager of Most Guys are Losers LLC ("MGAL").

Through and attorney claiming to "represent Stubblefield Films," Stubblefield Films then contacted the attorneys from Saban Films, and threatened legal action that halted the progress of the Picture.

Stubblefield Films made these threats that caused the destruction of this carefully negotiated deal, at a time that they were given multiple opportunities to prove their claims.

Stubblefield Films could not, or would not, prove their claims of ownership to Saban Films and DDI.

Consequently, as a direct result of Stubblefield Film's actions, Saban Films "walked away from the deal."

The deal, contrary to Stubblefield Films' claims, would have been lucrative.

Although it is difficult to determine a Film's value is to the marketplace until the film is released, the film had been valued as high as $8,200,000 by multiple reputable valuation specialists in the Entertainment Business.

The deal included $125,000 in up front money, a rarity in the Entertainment Business, and bench mark given by the distributor and an implied acknowledgment by Saban Films that the film had at least a value of $1,250,000 in a "worst case scenario," as Distributors are only typically willing to provide 10% of up front money based on the lowest value estimate derived of the Picture.

Defendant's alleged tortious interference would continue.

Stubblefield Films chose to ignore unions, producers, actors, the writer and director, and effectively "shelve" the other at least nine offers still on the table for the film.

Instead of taking the necessary and appropriate steps to validate their claims of ownership, Stubblefield Films chose a path of obstruction. Stubblefield Films would not engage with unions, the writer/director of the film, other distributors, or any other parties associated with the Entertainment Business.

Their methods of stalling, while failing to produce documents (despite being under a request in a Court to do so) devalued the asset drastically and quickly.

All of these destructive actions were done on behalf of Stubblefield Films, after the company attempted to sell the asset, but wasn't able to do so, as they failed to provide documentation that they owned the asset.

As far back as November 2021, Stubblefield Films, though not even registered as an "official company" and without an EIN, admitted to starting "discussions" with Netflix and A24,

a top end Distributor, relating to the attempted sale of the Picture by Stubblefield Films, a company that had not even been created yet.

According to Mariner Kemper and Mark Berzins, both associates with the Film, Stubblefield Films contacted Todd Boehly, owner of A24, and fraudulently notified him that "Stubblefield Films owned the Picture."

Had Stubblefield Films notified the legal and rightful owner of the asset, Pier Avenue Films, the Plaintiffs would have been willing to legally accept any potential offer to Stubblefield Films, while they were partaking in unauthorized "discussions" with A24.

Instead, Stubblefield Films took an oath of silence. Stubblefield Films, using the name "Stubblefield Films" before the company ever officially existed, had the lawyer claiming to represent the LLC contact actors, former employees, lawyers legal associated with the LLC, and agents, and ordered them to "not communicate with anyone associated with MGAL LLC, or Pier Avenue Films."

This request was done so at a time that Defendants knew that Pier Avenue Films was the only Production Company associated with the Picture. This destructive action was done so at a time when Stubblefield Films could not legally represent themselves as owner of the asset, as evidenced by their inability to sell the Picture, even after Stubblefield Films was presented with at least nine offers to sell the rights.

Stubblefield Films couldn't "sell the rights" because they clearly did not own the rights, as evidenced by the contracts presented to a Colorado Court.

The alleged tortious interference occurred as a direct result of Stubblefield Films' actions, when A24 and Netflix would subsequently choose to end all "discussions," But that still didn't deter Stubblefield Films' destructive path.

In April of 2022, the Picture was legally acquired by Gravitas Ventures, through contracts executed by Eric Ustian, owner and operator of MGAL LLC and Pier Avenue Films LLC.

Through the lawyer claiming to represent Stubblefield Films, Stubblefield Films then

took more desperate and dramatic steps to interfere with yet another carefully negotiated deal.

Stubblefield Films contacted Gravitas Ventures, under the justification of fraudulently claiming to "own the movie" - and once again, threatened legal action against the Plaintiffs and Gravitas.

Stubblefield Films even took the escalatory path of filing motions in a Colorado Court. A court, that in the opinion of the Plaintiffs in this case, had no jurisdiction to hear the case filed by Defendants. Defendants knew this fact, as evidenced by the Operating Agreement presented to the Defendants dozens of times.

In a court filing from Stubblefield Films:

"Plaintiffs are in the process of attempting to work with Gravitas Ventures to ensure that the proper parties involved in interest are involved in any transaction related to the Picture. *However, if those discussions do not lead to a negotiated resolution, it may be necessary for Plaintiffs to move this court for an order enjoining any sale of the picture during the pendency of this case.*"

According to the operating agreement, of which Defendant and the Plaintiffs provided to the Courts, the proposed action, or threat of action, by Opposing Counsel related to asking a Colorado Court to essentially block the sale of the movie, is illegal.

Section 12.9 - of the operating agreement:

…. "The parties agree and acknowledge that in the event of a breach by a party of any obligation hereunder, the damage caused any other party *shall not be irreparable or otherwise so sufficient as to give rise to a right to seek or obtain injunctive or other equitable relief,* and the parties hereto acknowledge that their rights and remedies in the event of any such breach shall be limited to the right, if any, to recover damages in an action at law and *shall not include the right to enjoin the development, financing, production, distribution or other exploitation of the Picture hereunder."*

Plaintiffs and Defendants are well versed in the terms of the operating agreement, yet Stubblefield Films used this tactic as another means to obstruct the sale of the Picture.

Since the filing of the original complaint, Defendants have only increased their tortious interference and the effect was devastating to the value of the film.

Defendants effectively blocked the release of the film, using means that clearly did not benefit the success of the Film, and those actions lost the film's release that was scheduled by Gravitas Ventures, even while being informed that the blocking of the release could render the Film "unmarketable" and without value, and even at a time that the Film was set to benefit from

the positive PR on the film, PR that was paid for by the Plaintiffs.

Defendants were even presented by multiple lawyers, including current Counsel for Eric Ustian (attorneys that do not represent the Plaintiffs in this case, but represent Eric Ustian in his negotiations with Gravitas Ventures) that attempted to salvage any value left for the film, with multiple offers that were intended to stop the film from being worthless by missing the release, by offering to put all income in escrow and a third party vendor, while legal issues were worked out.

Defendants refused those offers from Gravitas and Plaintiffs. Instead, while claiming to be negotiating in good faith, Defendants were filing Motions to enjoin the Film from ever being released, and they were doing so in a Court in Colorado that clearly had no jurisdiction to hear the case, as evidenced by both operating agreements for Most Guys are Losers Film LLC, and Pier Avenue Films LLC containing clear language that prevented the Film from being enjoined, and prevented any action that impeded the progress of the sale of the film to distributors.

According to analytics, by the Film not being released on July 1, 2022, as the Film was set to be released in dozens of theaters across the country, and on multiple streaming services, the film lost $687,000 to date in revenue, all at a time when the Defendants refused to simply allow that revenue to be placed in escrow, while the legal process and claims were heard.

## SECOND CAUSE OF ACTION

### TAX FRAUD

In April of 2022, Deseree Rudolph, an employee of Drake Real Estate Services, presented investors in the companies, MGAL LLC and Pier Avenue Films, with K-1 tax forms.

K-1 tax forms are filed legally on companies that are not single member LLC's.

Both companies, MGAL LLC and Pier Avenue Films, are single member LLC's.

Ms. Rudolph is not a CPA.

Ms. Rudolph is not employed by MGAL LLC or Pier Avenue Films LLC.

Ms. Rudolph admitted in writing to Plaintiffs that she is employed by Drake Real Estate's Services.

It is the position of the Plaintiffs, that Ms. Rudolph's actions constituted at least attempted tax fraud.

Drake Real Estate Services would subsequently not provide the executed version of the tax forms sent to investors by Stubblefield Films, using an employee of Drake Real Estate services, despite requests made in a Colorado Court to do so.

Under the terms of the operating agreement ("OA") the taxes completed for the LLC's

that legally owned the asset, needed to be completed by a CPA.

The at least attempted action by Ms. Rudolph, was at least attempting to place the tax burden of the Company onto the liability of Pier Avenue Films and MGAL LLC.

To be clear - this was done so at a time that MGAL LLC filed taxes related to the companies that owned and are associated with the asset.

Since the original filing of this complaint, Plaintiffs were informed of more alleged tax fraud perpetrated by Stubblefield Films. By the Defendants informing investors and Plaintiffs of a secured loan and lien on Most Guys are Losers Film LLC over a year after accepting the money from that loan, while apparently not accepting the loan and lien, while not be willing to state what the loan was for or where that money went, Stubblefield Films was allegedly attempting to devalue the asset, by means of claiming liens and loans on the Company, liens and Loans that the Company, nor Plaintiffs were aware even existed, as the money was never placed into the bank account of Most Guys are Losers Film LLC. Mr. Hauser and Stubblefield Films purposely blocked the asset from being exploited in the marketplace, as evidenced by Drake Real Estate Services providing investors and the IRS with K-1 tax forms claiming losses on the company. These losses were claimed at a time that the Film clearly had value, as evidenced by the offers that Stubblefield Films would refuse to even engage on, and subsequently, around a year later, when the Film was acquired by Gravitas Ventures and the Film received positive reviews and press coverage.

### THIRD CAUSE OF ACTION

### DEFAMATION

As far back as early 2022, Stubblefield Films, through the lawyer claiming to represent the company, engaged in a months long campaign in defaming Pier Avenue Films and MGAL LLC. Their actions of slanderous and libelous behavior against those companies, stemmed from their public allegations of the owner of the companies being "homophobic."

Plaintiffs deny that the companies represent "homophobic" behavior. Plaintiffs have been a vocal advocate of LGBTQ rights publicly since the inception of both companies. These allegations, as presented by Stubblefield Films, were not based in any evidence that Stubblefield Films could provide.

Yet the allegations had direct and harmful financial effects to the companies, and to the reputation of the companies that Eric Ustian owns.

Plaintiffs view these allegations presented to multiple parties as defamatory with the

intent to slander the companies.

In a phone call with the lawyer claiming to represent Stubblefield Films, Jason Spitalnick informed Plaintiffs: "Good luck getting a job in Hollywood when they think you are homophobic."

When given a chance by Plaintiffs for Stubblefield Films to deny their lawyer taking steps to defame the companies, Mr. Spitalnick would not deny the recollection of the phone call and it's contents and his threat made to the representative of MGAL LLC and Pier Avenue Films.

## FOURTH CAUSE OF ACTION
## WRONGFUL ACQUISITION OF PROPERTY/UNJUST ENRICHMENT

In or around May of 2021, Defendant's claimed that Eric Ustian was "removed" from his position of the Manager of Most Guys are Losers Film LLC. Defendant's provided no reason for Mr. Ustian's alleged removal as Manager of the single member LLC. Defendants, at that point in time, did not accuse Mr. Ustian of any "criminal act," as was the requirement per the operating agreement of Most Guys are Losers Film LLC. Defendants did not meet with investors or all members of the company, prior to the alleged removal. Defendants did not inform the unions associated with the Film of Mr. Ustian's alleged removal. Additionally, during the time of Mr. Ustian's alleged removal as Manager, under legal threats, Defendants required Mr. Ustian to file taxes for the company, a single member LLC. When Mr. Ustian would later bring to the attention of Stubblefield Films, Drake Real Estate Services and Jon Hauser, it would be impossible for Mr. Ustian to be legally removed as Manager, at a time that he remained legally required to file taxes, and at a time, that continues to today, that the California Franchise Tax Board recognizes Mr. Ustian (Eric, not Daniel C. Ustian) as Manager of the single member California based LLC. Defendants never even responded, nor denied Mr. Ustian's (Eric's) claims or the validity of the claims.

The removal of Manager required "majority interest" and criminal accusations, none of which the Defendants provided the Plaintiffs, or the investors or members of the Company

before the alleged removal.

Furthermore, "majority interest" could never legally be obtained, as the in the formation of the company and the operating agreement, it clearly states that the Manager of the Company has 50% interest in the Company. Even if Eric Ustian was legally removed as Manager, the replacement as Manager, who would claim to be Daniel C. Ustian (Eric Ustian's own father and an investor), would not legally be able to represent more than 50% interest in the Company.

It is worth noting, that Plaintiffs were made aware that Daniel C. Ustian is financing the legal costs associated with Jon Hauser and Stubblefield Films, along with the legal costs of Nancy Apel, along with also retaining Mr. Berry as representation for Ms. Apel and Daniel C. Ustian, in the upcoming binding arbitration regarding Daniel C. Ustian's legal dispute with his son, Eric Ustian. Ms. Apel, Eric Ustian, and Daniel C. Ustian are all Members of Most Guys are Losers Film LLC, and thus, through the operating agreement for MGAL FILM LLC, are bound to handle all legal disputes in binding arbitration in a Los Angeles Court.

At the same time of notification of Eric Ustian's removal as Manager, Stubblefield Films claimed in an email, that "the transfer had now taken place."

And clearly, in the eyes of Stubblefield Films and Jon Hauser, that was all it took to prove a transfer of ownership from a California based LLC to a Colorado company with no affiliation in the entertainment industry. Despite dozens of requests from lawyers that at one time represented the movie, a request filed in a Colorado Court, and requests from other investors and buyers in the marketplace, Stubblefield Films would refuse to provide a pertinent, valid, and executed transfer of ownership document. Stubblefield Films and Jon Hauser would refuse to provide ANY Chain of Title documents to investors, a Colorado Court, buyers in the marketplace, unions, or the Plaintiffs, despite dozens of requests to do so. It can only be gleaned, that Stubblefield Films and Jon Hauser would not provide these obviously relevant documents to prove ownership of the asset, because they could not provide the documents, as they did not have these vital documents that proved ownership of the asset.

These actions clearly demonstrated unjust enrichment on the part of Stubblefield Films and Jon Hauser, as the alleged transfer of the assets did not even include any payment to Most Guys are Losers Film LLC for the asset.

Additionally, as described in further detail in the other causes of actions below, Stubblefield Films would accept the funds of a loan that was secured to Most Guys are Losers Film LLC. The loan was attached to a lien, that effectively gave ownership to Evan Zucker, a possible Member of Stubblefield Films (though that cannot be confirmed, as Stubblefield Films, nor Jon Hauser will state who the actual Members are of the Company) for a loan of $250,000. The money never was received in the bank account associated with Most Guys are Losers Film LLC, thus it can only be assumed that Stubblefield Films and Jon Hauser accepted the money of the loan, while effectively not accepting the liability of the loan and lien.

The Film's value was far greater than $250,000, and had nine offers that would have earned  the film income of more than $250,000 over ten years.

It is the view of the Plaintiffs that Defendants claiming to essentially "purchase" the film, through means of an alleged transfer of ownership, while not paying Most Guys are Losers Film LLC any money to acquire those rights, while claiming a lien on the CA company, while not claiming liability for the loan or lien, while accepting the money from the loan (a loan that was not even legally given to Stubblefield Films) is clearly evidence of Plaintiffs using an illegal and wrongful acquisition to to unjustly enrich themselves, as the value of the movie was in the millions.

## FIFTH CAUSE OF ACTION

## CONSPIRACY

It is the position of the Plaintiffs that Defendants took actions that can only be described as conspiracy.

Since the companies inception, Stubblefield Films conspired to steal the asset and/or stall the process of sale with the intent to purposely devalue the asset, in the view of Plaintiffs'.

In or around June of 2021, the lawyer claiming to represent the Film contacted Evan Zissimopolous, a producer and editor of the film. that was in possession of "the drive" that contained all of the assets of the $2,7000,000 financed project.

Stubblefield Films contacted Evan at a time in which the drive was crucial to the delivery of the Picture to meet the Spec Requirements of Saban Films. Under threats of legal action taken against him by Lawyers claiming to represent Stubblefield Films, Evan illegally provided the drive to whom he referred to in writing as, " a representative of Stubblefield Films."

The drive legally belonged to Pier Avenue Films and MGAL LLC, and the Defendants have never disputed this fact.

Despite multiple police reports filed, and multiple Motions filed in a Colorado Court, Defendants failed to provide the drive to the rightful owner of the asset, and even failed to provide information on the whereabouts of the drive.

It is the position of the Plaintiffs that theses actions by the Defendant's rise to the level of conspiracy, as since being in possession of the drive for nearly a year, Defendants have failed to do any tangible work on the Movie or the drive, thus, in the Plaintiffs' view, implying the only logical intention of the action of allegedly stealing the drive can be seen as a means to attempt to obstruct the sale of the film.  Allegedly stealing the drive, while failing to perform the necessary labor and cost to advance the film, is, the Plaintiffs' view, clear evidence of using the action of stealing the drive, as part of a larger conspiracy. A conspiracy to defraud MGAL LLC and Pier Avenue Films out of income, through using the drive as "hostage" in order to prevent MGAL LLC and Pier Avenue Films from being able to sell the Picture.

### SIXTH CAUSE OF ACTION

### THEFT OF INTELLECTUAL PROPERTY

In Late June of 2022, Defendants informed Plaintiffs of the existence of an altered version of the film. Defendants referred to this version of the film as the, "Stubblefield Cut."

Defendants had no authority to alter the intellectual property of the film, per the contract with the Directors Guild of America ("DGA") and per the terms of the operating agreement of Pier Avenue Films and Most Guys are Losers Film LLC. Even by Defendants own admission, several times in writing, they had no legal authority or right to alter any aspects of the "creative" rights related to the Director's "final cut."

The film premiered with it's final cut at three separate screenings at The Denver Film Festival in 2020.

This was around the time that Defendants began their destructive actions aimed at preventing the release of the film.

Certain music licensing became unavailable. as is common in the industry, in Spring of 2022, Plaintiffs removed the non acquired songs from the film and replaced the songs with legally acquired songs.

The final cut, including the music licensing, was then screened by hundreds of people, including, but not limited to, agents, distributors, actors, movie critics, lawyers representing talent, the talent, the talent's managers, and private screenings of the final cut of the film.

In June of 2022, the final cut of the film received a "3 out of 4 star" review by a top end and reputable film critic; a rarity for a film considered "low budget" by industry standards.

By June of 2022, Gravitas Ventures had the final cut in the possession of around a dozen streaming services, along with theaters in multiple cities nationwide.

It was only at this time, after the film had already been acquired, had three premieres, had multiple screenings, and was fully delivered to streaming services and theaters (at an out of pocket cost of around $40,000.00 by Plaintiffs to delivery film to meet specs provided by Gravitas Ventures as part of their contractual requirements for the Picture) that Defendants finally informed Plaintiffs, and Gravitas Ventures, that they had their own version of the film.

Not only were Defendants not legally able to alter the film in any way creatively, as per the union requirements and DGA contract granting the Director "final cut," by Defendants admitting in writing of the existence of an altered version of the film, Defendants clearly stole

the intellectual property of Plaintiffs'.

Additionally, while it can be common for a Studio to alter a final cut, as per stipulated by a contract, of which Defendants do no posses as it relates to their claims of having authority to alter the final cut, Defendants are a real estate company, a company in Stubblefield Films with no affiliation in the entertainment industry, and an individual, Jon Hauser, that had no ability and experience on the film, the pre production and post production of the film, and necessary skills to edit a multi million dollar film.

## SEVENTH CAUSE OF ACTION

### FRAUD

It is the view of the Plaintiffs that Stubblefield Films and Drake Real Estate Services committed fraud when they made false promises and material misrepresentations that relied upon others to benefit the Defendants, at the detriment of the Plaintiffs. It is the view of the Plaintiffs that Defendants used intentional deception for their own monetary gain. Defendant's continue to make false statements. Statements like informing distributors that they "own the film," all while continuing to provide no evidence to validate their claims.

It is the view of the Plaintiffs that Defendants misappropriated assets by illegal wiring $27,000 to Mark Rosenberg, then forming a company, Stubblefield Films, that would subsequently, after the alleged interstate wire, false impersonation and embezzlement took place, "contact Bank of America" and use their false impersonation to illegally obtain banking records from the Plaintiffs.

The Plaintiffs also allege Financial Statement Fraud against the Defendants. In April 2022, Defendants provided K-1 tax forms to investors in MGAL LLC. By doing so, in the Plaintiffs view, they were providing Financial Statement Fraud to investors of another company because Defendants knew that they didn't own the asset, nor were the companies that own the asset, the Plaintiffs, involved in the at least attempt of committing the afore mentioned alleged tax fraud.

Through Bank of America's investigation proving that the Plaintiffs were falsely impersonated as a means to commit alleged bank fraud, wire fraud, and embezzlement, and to illegally obtained banking records - and through the actions of the attorney claiming to represent the asset illegally contacting the bank, Plaintiffs claim that identity theft was used by Stubblefield Films as a means to commit fraud on MGAL LLC and Pier Avenue Films.

Plaintiffs accuse Defendants of tax fraud, as it relates to fraud, and as described in the tax fraud cause of action described in this complaint.

In the view of the Plaintiffs, all of these described actions of the Defendant's were corrupt as Stubblefield Films unlawfully and wrongfully used their perceived and unproven position of authority to attempt to procure a benefit to Stubblefield Films and Drake Real Estate Services. The Plaintiffs view that these actions clearly rise to level defined as "Grand" corruption, as the asset that they were committing these alleged acts of corruption was valued at least $2,700,000, the budget of the Picture.

## EIGHT CAUSE OF ACTION

## PAIN AND SUFFERING

Defendants actions, as described in this Complaint, have had a devastating financial impact on MGAL LLC and Pier Avenue Films LLC, and also caused great pain and suffering for the Plaintiffs. The Company's lost employees of over seven years, as a result of Stubblefield Films contacting those employees, and providing those former employees with false and defamatory information about the Plaintiffs. Stubblefield Films, through the attorney claiming to represent the company, also threatened former employees with legal action, for, as a former employee stated to the Plaintiffs, communicating in any way whatsoever to the Plaintiffs.

This was at a time that Plaintiffs were attempting to work with Actors, editors, sound engineers and agents to finish and sell the Picture. These actions were counter productive to the advancement of the Film, as the threats made by Defendants, while they were being non responsive to Plaintiffs and distributors trying to buy the film, caused the third parties referenced to fear working with Plaintiffs.

## NINTH CAUSE OF ACTION

### COMPENSATION FOR DAMAGES ACCRUED BY DEFENDANT'S ACTIONS

The Film's value has decreased dramatically by the actions of Defendants.

The Film had lucrative offers as far back as September 2020.

Through the Defendant's actions, and their lack of proof of their ownership of the asset, it is the view of the Plaintiffs that caused, and continue to cause great damage to the value of the Film.

Films lose value the longer they are not sold. By Defendants effectively and illegally "blocking" the sale to Saban Films, along with contacting agents, actors, distributors, including but not limited to A24 and Netflix, the Film missed out on potentially lucrative theatrical holiday release dates, as was the plan for former distributors/interested distributors, prior to the destructive behavior of Defendants.

Defendants actions caused great financial harm to Plaintiffs. Not only is Eric Ustian not paid his salary attributed to his and his company's 7 years of work on the Film until after the Film sells, Pier Avenue Films' value is dramatically lower until the Film is released.

While there are many production companies in the Los Angeles area, Production Companies that are able to produce and sell a multi million dollar film, are usually dramatically more valuable than Production companies that do not have that credit.

As the only production company legally associated with the film, Pier Avenue Films already has missed out on opportunities for financing for the company's next film, as the financing was conducive on the company selling the company's first film, Most Guys are Losers, to a distributor.

The offers for financing by third party investors and production company's failed to materialize, after, in the Plaintiffs' view, attempted to make it impossible for the film to sell, as the Defendants tried to sell the asset, but didn't have the necessary proof and contracts for sale, while, at the same time, Defendants were attempting to illegally, in the Plaintiffs' view,

blocked the sale of the Picture to any third party.

Additionally - Eric Ustian's lowest rate is $6,200 per week, going as high as $18,000 per week. It is the view of the Plaintiffs', that Defendant's actions of purposely stalling the progress of the Film, even while Defendants could not provide relevant and legally executed contracts to validate their ownership claims, while making defamatory statements to  nearly every person associated to the Plaintiffs in the Entertainment industry, had great damage to Eric Ustian's reputation and career.

Writer/Directors are more valuable and more in demand after their first movie is released. When the movie is not released, it is more detrimental to the hiring prospects for the Writer/Director than if the Writer/Director never made a film. To put it more clearly, the career prospects of a Writer/Director who makes a film that is sold to a distributor and released theatrically, has far more job opportunities and his or her rate is far higher than the minimum $6,200 per week for Directors. While a Writer/Director that makes a film that never is released due to the fact, in Plaintiffs' view, a real estate company in Denver illegally continues to interfere with the advancement of the Film and the sale of the Film, has far less value, and the effect to his or her career can be catastrophic.

## TENTH CAUSE OF ACTION

### NEGLIGENCE

It is the position of the Plaintiffs, that Defendants acted in negligence, while claiming to own the asset that is owned by MGAL LLC and Pier Avenue Films. During the long period of time that Defendants were claiming to own the asset, Defendants took no known substantive action to progress the sale of the asset that Defendants were claiming to own. In Plaintiffs' view, Defendants clearly did not behave with the level of care of their claimed ownership of the asset that Plaintiffs did, during the same time frame, as the valid and recognized owners of the asset, the Film.

Despite Plaintiffs disputing the claims that Stubblefield Films in connection with Drake

Real Estate Services owned the Film, even while under the only perceived notion that Stubblefield Films did own the asset, Defendants were clearly, in the view of Plaintiffs, causing harm to the Companies that own the Film, and the Film. Plaintiffs view the conduct while Stubblefield Films was claiming to own the Picture as a breach of their duty, even when their ownership was only perceived.

As supposed "owners" of the asset, Stubblefield Films failed to finish funding of the Picture. At at time that Stubblefield Films and Drake Real Estate was making false claims, MGAL LLC and Pier Avenue Films was financing the duration of the Picture. The investment by MGAL LLC and Pier Avenue Films was substantial. Nearly $100,000, along with the labor of Eric Ustian not being paid for.

Therefore - in the view of Plaintiffs, while Plaintiffs were completing the financing of the film, even despite Plaintiffs, according to the OA, not being required to provide financing, Defendants were financing lawyers to obstruct the progress of the film, without the permission of MGAL LLC to hire attorneys to represent the Film.

While Plaintiffs were using the offices of Pier Avenue Films to complete the laborious process of completing the deliverable requirements for the distributor, Defendants were being non responsive and combatant and obstructionists.

While Pier Avenue Films was working with hired editors and the distributor to make the necessary changes to improve the Picture and meet spec requirements, Stubblefield Films, in the office address of Drake Real Estate Services, was not functioning as a production company. Drake Real Estate Services, the address for Stubblefield Films and the claimed "accounting" of Stubblefield Films, is a real estate development company with no experience, relationships, or financing in the Entertainment Business.

## ELEVENTH CAUSE OF ACTION

## IMPRUDENT LOANS FROM, AND SELF DEALING ACTIONS WITH, EVAN ZUCKER AND POWDER BOWL INVESTMENTS

In 2022, Plaintiffs were made aware of a $250,000.00 secured loan provided by Evan

Zucker, acting as Manager of Powder Bowl Investments. Evan Zucker is a known business associate and friend of Jon Hauser.

The secured loan involved a tax lien placed on Most Guys are Losers Film LLC.

The loan was never provided to the only bank account associated with the company, Most Guys are Losers Film LLC.

Additionally, no information was given of where or whom that loan money went to, or what the purpose of the loan was, despite multiple requests from a reputable law firm that does not represent me currently in this case.

The loan was not approved by investors in the film, nor were investors notified of the loan and lien.

Plaintiffs paid nearly $100,000.00 to cover costs associated with the film, including delivery to Gravitas Ventures, employee salaries, (none of which were salaries for the Plaintiffs) marketing of the film, and costs all associated with exploiting the film in the marketplace.

The loan was for Most Guys are Losers Film LLC ("MGAL LLC"), yet MGAL LLC never received the funds through a bank account registered with the film.

In or around May 2022, Defendants, through their counsel, contacted Gravitas Ventures and informed them of the lien and secured loan with Evan Zucker and Powder Bowl Investments.

That loan money never went through MGAL LLC or it's bank account. Therefore, it can be reasonably assumed that the loan money went to Stubblefield Films.

Yet, Stubblefield films is not the company that the secured loan and lien that was filed with the State of California with.

## TWELFTH CAUSE OF ACTION

## EXTORTION

Extortion can be defined as the unlawful exaction of money or property through intimidation.

Through two separate law firms in two different States, both firms representing Stubblefield Films, Defendants made it their mission to intimidate Plaintiffs into signing a proposal that awarded them rights to the Picture. Attorneys for Defendants stated to Plaintiffs that in order for the Film to be released, Plaintiffs were required to sign a proposal presented by a Colorado law firm.

This threat was done at a time when Eric Ustian's attorneys, and Gravitas Ventures, were presenting Defendants with reasonable solutions that prevented the Film from once again, having it's potential success impeded by the actions of the Defendants.

Part of the proposal presented by Defendants, of which Plaintiffs offered a counter, through a reputable law firm, was that the requirement of Plaintiffs to drop all legal actions against Defendants, and others.

By these actions, Plaintiffs could only reasonable interpret that Defendants were demanding something of value to them (the Film and requiring legal action to be dropped against them) and using intimidation to attempt to get what they wanted (Plaintiffs to transfer rights to Defendants) - using the threat of blocking the sale and subsequent potential success of the Film, in order to receive the "things" of value that they were seeking.

## THIRTEENTH CAUSE OF ACTION

## COPYRIGHT INFRINGEMENT

According to Rule 501. Infringement and copyright, "remedies for Copyright", the Court may order the impounding, on such terms as it may deem reasonable - ...

The creative property was registered with the United States Copyright office in late 2019. The Copyright is to MGAL LLC. The copyright has never been changed, despite Defendants claiming to own the Copyright of the film. Stubblefield Films clearly, and unambiguously, do not own the copyright to the creative asset, as evidenced by the document with a seal from the U.S. Copyright office stating that the copyright belongs to MGAL LLC.

Under 506. Criminal offenses

(1) In general. - Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed -
(A) for purposes of commercial advantage or private financial gain;

Clearly, by claiming to own the copyright to the creative property, they were doing so to take advantage in the marketplace, which would thus lead to their private financial gain.

## FOURTEENTH CAUSE OF ACTION

## REQUEST FOR INJUNCTIVE RELIEF

So far, to this date, Defendant's actions can conservatively be equated to have lost over $500,000.00 of revenue for the Film. During the first week of release, a release that through Stubblefield Films' actions effectively blocked, estimates of the revenue lost has been stated as much as $100,000.00 a day. Every day that the film is effectively "shelved" by the Defendants, as has been the history of Defendants actions since the inception of Stubblefield Films and appointment of Jon Hauser as it's Manager, is lost revenue and lost opportunities to capitalize on the successful marketing campaign that Plaintiffs funded. Every day the Film remains unreleased, cause monetary damages and damages to the reputation and career of Eric Ustian, and his production company, Pier Avenue Films.

For these reasons, Plaintiffs respectfully asks the Court for injunctive relief, and?or demanding that the Defendants provide Chain of Title contracts that validate their claims of ownership of the film, or discontinue actions that enjoin the Film, and have devastating impact to the finances and success of the film. Plaintiffs view this request for injunctive relief as vital to saving any remaining value in the Film, as every day that the Film is not released, directly correlates to lost revenue in the Film, and future success of the Film.

On this 10th day of July, 2022

Eric Ustian